UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-270-GWU

SHARLA M. MILLER,                                                   PLAINTIFF,

VS.                   **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

    1.     Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

    2.     Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

    3.     Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Miller

>    Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

Miller

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

Miller

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Miller

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Sharla M. Miller, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of uncontrolled tachycardia caused by morbid obesity, tobacco abuse, chronic obstructive pulmonary disease, and hypertension. (Tr. 27). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work as a "home desk worker and admissions clerk" and, therefore, was not entitled to benefits. (Tr. 32-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she was capable of "sedentary" level exertion, could sit indefinitely, could stand and walk for two hours in an eight-hour day, and also had the following non-exertional impairments. (Tr. 90). She: (1) could not climb ladders, ropes, or scaffolds, balance,

Miller

or crawl; (2) could occasionally climb ramps or stairs, crouch, kneel, and stoop; and (3) needed to avoid temperature extremes, concentrated dust, whole body vibration, and exposure to hazardous machinery or heights. (Id.). The VE responded that with these restrictions, the plaintiff could perform her past relevant work and, in the alternative, identified other jobs which could be performed and gave the numbers in which they existed in the state and national economies. (Tr. 90-1).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff notes on appeal that several treating physicians offered opinions suggesting significantly more restrictions than were credited by the ALJ. Her treating family physician, Dr. Umar Murad, repeatedly provided functional capacity assessments which limited her to less than full-time work based on problems with tachycardia. (Tr. 386-8, 426-8, 446-7, 563-8). In addition, Dr. Peter Gallagher--a cardiac surgeon who performed radiofrequency ablation with partial sinus node modification on April 12, 2004 (Tr. 479-84, 546) and provided office notes of follow-up through June, 2004, and at which time he advised the plaintiff that she would need to have the procedure repeated (Tr. 585-6)--submitted a "cardiac residual functional capacity questionnaire" dated July 12, 2004 which would preclude all work (Tr. 579-84).

Miller

The ALJ rejected all of these treating physicians' opinions. He described some of the reports as having illegible signatures (Tr. 29, 386-8, 426-8) and, although the Court agrees with the plaintiff that in context they were likely signed by Dr. Murad, the issue is moot since the ALJ accepted that Dr. Murad was the author of an April 21, 2004 assessment which limited the plaintiff to lifting less than 10 pounds, sitting and standing less than 10 minutes, never performing any postural activities, and having environmental restrictions. (Tr. 563-8). Dr. Murad gave his patient's diagnosis as an uncontrolled heart rate despite maximum medications, worsened by stress, and opined that increased stress would interfere with her attention and concentration. (Tr. 563-5). The ALJ rejected this particular assessment, stating that an office note on the same date from Dr. Murad described the plaintiff as having a heart rate of 96, and denying chest pain, shortness of breath, and palpitations. (Tr. 569). The ALJ also rejected Dr. Gallagher's opinion, stating that both physicians were primarily repeating the plaintiff's complaints at face value without any supporting cardiac symptoms. (Tr. 30-1). Given the plaintiff's long history of abnormal findings, including actual measurements of tachycardia, at the offices of these sources as well as other doctors (e.g. Tr. 230-1, 240, 335, 342-3, 410, 442-3, 482, 555, 619), one office note showing a normal heart rate hardly constitutes substantial evidence to reject a treating physician's opinion. Nor is it persuasive that both Dr. Gallagher and Dr. Murad were merely repeating the plaintiff's subjective

Miller

complaints, given her repeated hospitalizations (e.g., Tr. 213-14, 224-5, 240-1, 406-7) and the operation performed by Dr. Gallagher, which he soon indicated would need to be repeated. (Tr. 558, 585-6).

The ALJ also cited two additional factors to reject the opinions of Doctors Murad and Gallagher.

First, he indicated that Dr. Leonard Sommers, an expert in cardiology who appeared as a medical expert (ME) at the August 30, 2004 administrative hearing, testified that Dr. Gallagher's restrictions were "somewhat extreme," and was repeating what the claimant told him with little support "in the chart." (Tr. 30). However, no such statements are contained in the Court transcript of the ME's testimony. (Tr. 81-5). Dr. Sommers appeared to testify that limitations described by Doctors Gallagher and Murad "were appropriate until she improves, based on her current condition," although he did not feel the restrictions were due to heart disease. (Tr. 81). While this testimony is not entirely clear, it appears to bolster the treating physicians' opinions as far as restrictions are concerned, rather than undermine them.

Second, the ALJ emphasized the fact that the plaintiff continued to smoke against medical advice, and the Commissioner makes this his main argument on appeal. There is no question that during much of her treatment, the plaintiff admitted to her doctors that she smoked, and she was warned that she needed to stop.

10

Although most of the warnings were specifically related to breathing problems, the smoking was also linked to the tachycardia which Dr. Murad and Dr. Gallagher indicated was disabling.  For instance, Dr. Murad told the plaintiff in February, 2003 that her chronic obstructive pulmonary disease (COPD) was worsened by smoking, and smoking "could contribute" to her tachycardia.  (Tr. 439).  In July, 2003, the physician indicated that "she smokes excessively even knowing that she has severe tachycardia related to that." (Tr. 430).  The ALJ cited 20 C.F.R. Sections 404.1530 and 416.930, which instruct a claimant that he or she "must follow treatment prescribed by your physician  if this treatment can restore your ability to work [and i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled...." (Tr. 31-2).  However, the Sixth Circuit has noted that "failure to follow prescribed treatment becomes a determinative issue only if the claimant's impairment is found to be disabling under steps one through five and is amenable to treatment expected to restore ability to work."  <u>Hester v. Secretary of Health and Human Services</u>, 886 F.2d 1315 (6th Cir. 1989) (unpublished), citing <u>Harris v. Heckler</u>, 756 F.2d 431, 435 n. 2  (6th Cir. 1985). In the present case, the ALJ appeared to find that the plaintiff's tachycardia was not disabling under any circumstances.  In any case, assuming that the ALJ was indicating that the plaintiff would have been disabled "but for" smoking (and possibly obesity), this is only lay speculation in the absence of a medical opinion to this effect. As the Sixth Circuit

Miller

noted in Harris, "the record is devoid of any evidence that [the plaintiff] would have regained his residual capacity for work if he had lost weight and stopped smoking." Id.

Therefore, a remand will be required, at a minimum, to obtain supplemental medical expert testimony if the opinions of the treating sources are to be rejected.

The plaintiff has also submitted additional evidence to the Appeals Council (Tr. 679-82), which may be considered along with other new evidence on remand.

The decision will be remanded for further consideration.

This the 10th day of April, 2007.

Signed By:

G. Wix Unthank

United States Senior Judge

12